IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN MIGUEL MUÑOZ VARGAS, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> DR. OLGA ROGRIGUEZ LAGUER, et. al., <br><br> Defendants. | CIVIL NO. 14-1597 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

This case arises out the alleged negligent treatment that minor Plaintiff JMF received from several Defendants. The minor's parents, Plaintiffs herein, allege that Defendants failed to properly diagnose JMF's congenital conditions, a tethered cord and dermal sinus tract, which in turn caused the minor to suffer two bouts of meningitis, multiple infections in his back, an unnecessary surgical procedure, and extended hospitalizations during the first year of his life. Dr. Normando Durán ("Dr. Durán"), a surgeon, performed the alleged incorrect procedure at Hospital San Antonio in September 2012, after misdiagnosing the minor's condition. This, in turn, further complicated the child's condition and aggravated his damages, which required subsequent corrective surgery by Dr. Iván Sosa. As part of its defense, Hospital San Antonio, one of the remaining Defendants in the case (hereinafter, "Defendant"), hired Dr. Fernando García ("Dr. García") as an expert in this case to defend Dr. Durán's actions, for which the hospital is vicariously liable.

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 2 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  2

Before the Court now is Plaintiffs' "Motion in Limine re: Dr. Fernando García", requesting Defendant Hospital San Antonio's expert be excluded.  (Docket No. 184). Defendant Hospital San Antonio has proffered a variety of reasons in opposition to Plaintiffs' Motion in Limine.  (Docket No. 199).

For the reasons explained herein below, the Court GRANTS Plaintiffs' Motion in Limine.  (Docket No. 184).

## STANDARD

The starting point for this analysis is Federal Rule of Evidence 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Thus, Rule 702 compels the district courts to perform the critical "gatekeeping" function concerning the admissibility of expert scientific evidence.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 n. 7, 113 S.Ct. 2786, 2795 n. 7 (1993).  The trial courts are also required to play the same gatekeeping function when considering the admissibility of technical expert evidence.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999).  This function "inherently require[s] the trial court to conduct an exacting analysis" of the foundations of expert opinions to ensure they meet the

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 3 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  3

standards for admissibility under Rule 702.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

The importance of Daubert's gatekeeping requirement cannot be overstated: "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152, 119 S.Ct. at 1176.  The Court's role therefore becomes especially significant, insofar as the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." Daubert, 509 U.S. at 595, 113 S.Ct. at 2798.

Thus, courts engage in a three-part inquiry in order to determine the admissibility of expert testimony under Rule 702: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  Daubert, 509 U.S. at 589, 113 S.Ct. at 2794. While there is inevitably some overlap among the basic requirements— qualification, reliability, and helpfulness—they remain distinct concepts.

The proponent of the expert always bears "the burden to show that his expert is 'qualified to testify competently regarding the matters he intend [ed] to address; [ ] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [ ] the testimony assists the trier of fact.' " McCorvey, 298 F.3d 1257.  Thus the burden of

establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.

When evaluating the reliability of scientific expert opinion, the Court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796. To evaluate the reliability of scientific expert opinion, we consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593-94, 113 S.Ct. at 2796-97. The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony. Kumho, 526 U.S. at 152, 119 S.Ct. at 1176.

Among other considerations given to the admissibility of expert testimony, and particularly relevant here, is that the district judge must be satisfied that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting. Daubert v. Merell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1316-19 (9th Cir. 1995).

Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by 'good grounds,' based on what is known." Daubert, 509 U.S. at 590, 113 S.Ct. at 2795. As the Supreme Court put it, "the Rules of Evidence— especially Rule 702—... assign to the trial judge the task of ensuring that an expert's testimony ... rests on a reliable foundation." Id. at 597, 113 S.Ct. at 2799.

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 5 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  5

Finally, a basic requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact.  By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.  <u>United States v. Martinez-Armestica</u>, 846 F.3d 436, 444 (1st Cir. 2017), <u>Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.</u>, 161 F.3d 77, 81 (1st Cir. 1998). Proffered expert testimony generally will not help the jury when "it offers nothing more than what lawyers for the parties can argue in closing arguments".  <u>United States v. Frazier</u>, 387 F.3d 1244 (11th Cir. 2004).

## LEGAL ANALYSIS

In support of Plaintiffs' argument to strike Dr. García as an expert, Plaintiffs submitted several uncontested facts.  In its response in opposition to Plaintiffs' motion, Defendant Hospital San Antonio submitted not one, but two "Statements Under Penalty of Perjury" by Dr. García, both signed after his deposition was taken.  The first one is dated October 13, 2016 and the second is dated February 17, 2017, after Plaintiffs filed their Motion in Limine to exclude him as an expert in this case and the same day Defendant Hospital San Antonio filed its opposition.

Plaintiffs submit to the Court that Dr. García's affidavits are inadmissible pursuant to the "sham affidavit" rule, which allows a Court to strike affidavits submitted in response to a dispositive motion that contain differing answers to deposition questions previously asked when there is no justification for the changed answers.  Plaintiffs argue that the sworn statements are a sham, because they provide additional and contradicting facts with the sole purpose of defeating the pending motion.  Surprisingly, Defendant Hospital San Antonio utterly failed to discuss this crucial matter in its opposition.  Instead, in opposition to many of Plaintiffs' facts, Defendant Hospital San Antonio proffers a citation

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 6 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  6

to the undersigned's Opinion and Order in the case of Torres v. Hacienda Madrigal, Inc., No. CV 15-1629 (CVR), 2016 WL 160702 (D.P.R. Jan. 13, 2016) regarding the role of the jury, which is misplaced here.

The issue in Hacienda Madrigal centered around defendants' argument that the conclusions of plaintiffs' expert were in direct contradiction to testimony offered *by a witness,* as a basis to argue that the expert's conclusions were faulty and, therefore, her testimony should be excluded on that basis.  The Court held that it was precisely the jury's role to evaluate conflicting statements and give them the probative value the jury saw fit.  That is not the case here, however, where the alleged contradiction is between the testimony offered by the expert witness and the subsequent affidavits submitted by *the same expert* after his deposition testimony had been recorded.  In fact, the First Circuit has written extensively about the precise issue presented here, as explained more fully below.

The First Circuit has refused, on numerous occasions, to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit.  Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); see also Torres v. E.I. DuPont De Nemours & Co., 219 F.3d 13, 20-21 (1st Cir. 2000); and Morales v. A.C. Orssleff's EFTF, 246 F.3d 32 (1st Cir. 2001).  In determining whether the testimony constitutes an attempt to manufacture an issue where one did not exist before, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies. See Orta-Castro v.

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 7 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page 7

Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006) (affirming the district court's decision to disregard later filed affidavit that contradicted prior deposition testimony). Such testimony can be stricken by the court when the party proffering the evidence provides no satisfactory explanation for the changed testimony. Torres, 219 F.3d 13, 20–21 (1st Cir. 2000) (*quoting* Colantuoni, 44 F.3d at 4–5). Furthermore, the Court need not specifically enumerate each contradiction between the witness' prior testimony and the later filed affidavit in order to disregard the evidence. See Orta-Castro, 447 F.3d at 110.

A review of the affidavits in question and the record evidence here reveals that Dr. García's post deposition affidavits contain new facts that are not contained in the rest of the evidence of record. Notably, the timing of the affidavits, one was signed after his deposition had been taken and the second one was signed the same day the opposition was filed, by itself, raises serious concerns as to their validity and authenticity. In Colantuoni, Torres and in Orta Castro, the First Circuit found similar chronology to the case at hand to be "probative of the fact that the non-movant was merely attempting to create an issue of fact." Orta-Castro, 447 F.3d at 110. And, as in Torres, neither affidavit provides any explanation as to the tardiness, the inconsistencies with previous facts and the new factual contentions raised therein. The lack of explanation as to why Dr. García's statements came to life post-deposition and notably, addressing the very same deficiencies Plaintiffs addressed in the Motion in Limine and signed the same day the opposition was filed pushes both sworn statements off the table. Accordingly, the Court will not consider Dr. García's declarations for purposes of this Opinion and Order, nor

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 8 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  8

will take into account any of Plaintiff's submitted uncontested facts that were premised on these declarations.

Having discarded both declarations of Dr. García, the Court finds the following facts as uncontested:

1. Dr. García has a bachelor's degree in science from McGill University. He obtained his medical degree from the Universidad de Salamanca, Spain, in 1962. See Exhibit 1, transcript of Dr. García's deposition, p. 10-11.

2. Dr. García studied his residency in surgery between 1968 and 1972 at the Veterans Administration Hospital in Centro Médico in San Juan and Ponce District Hospital. Id., pp. 11-12.

3. Dr. García has post-graduate studies in the areas of laparo-endoscopic surgery, and a refresh course for colon and rectal surgery. Id., p. 12.

4. Dr. García's main practice area is gastro-intestinal conditions. Id., p. 94.

5. Dr. García is not board certified. Id., p. 21.

6. Dr. García is not a pediatric surgeon. Id., p. 93.

7. During the time before Dr. García did his residency in surgery, he would only treat adults. Id., pp. 34-35.

8. Dr. García does not perform surgeries on minors. Id., page 94.

9. Dr. García has never performed a surgery like the one that Dr. Durán performed in this case. Id., p. 94.

10. Dr. García has been providing services as a medico-legal expert since approximately 2002. He has always been retained by the defense. Besides

      this case, Dr. García has only been an expert in one other case in federal court. <u>Id</u>., pp. 13-15.

11. In that other case, Dr. Garcá was qualified as an expert in general surgery. <u>Id</u>., p. 17.

12. Dr. García has never been an expert in a case that deals with conditions like the ones involved in this case. <u>Id</u>., pp. 17-18.

13. The conditions known as dermal sinus tract and tethered cord are treated by neurosurgeons. <u>Id</u>., pp. 35, 39 and 42.

14. Exhibit 2 is the operative report prepared by Dr. Iván Sosa, regarding to the surgery he performed on the minor at Hospital HIMA Caguas. Docket No. 184, Exhibit 2.

15. Because Dr. García is not a neurosurgeon, he cannot either accept or contest the preoperative diagnoses nor the postoperative findings of Dr. Sosa. Exhibit 1, pp. 49-50 and 63-64.

16. Dr. García has not reviewed the Complaint of this case. <u>Id</u>., p. 55.

17. Dr. García cannot explain how is it possible for a congenital condition like a dermal sinus tract to be present in a baby when he is one-year old but not present when the baby is born, as this falls outside the scope of his specialty. <u>Id</u>., pp. 59-61.

18. Exhibit 3 is a copy of the referral of minor plaintiff to the office of Dr. Durán. Docket No. 184, Exhibit 3.

19. Said referral states: "7-month-old boy with status post infected sacral dimple and viral meningitis on 6/25/12. Lumbosacral CT no connection

between dimple and spinal canal. Please evaluate." Exhibit 3, Exhibit 1, pages 99-100.

20. A dimple in the lumbosacral area is an anomaly. Id., page 115.

21. Dr. García has never treated nor operated a coccygeal pit or a sacral dimple. Id., page 137.

22. Dr. García admitted that, if he ever receives a referral like the one Dr. Durán received, he would have referred the patient to a pediatric surgeon. Id., pp. 99-101; pp. 121-122.

23. For the treatment of conditions like sacral dimple and coccygeal pit, Dr. García would refer the patient to a pediatric surgeon. Id., p. 138.

24. Dr. García does not know if, in an infant, anomalies in the coccyx area have different meanings than anomalies in the lumbar area. Dr. García would refer those patients to a neurosurgeon or a pediatric surgeon. Id., p. 142

25. The standard of care would require a general surgeon to refer to a pediatric surgeon a patient with a hemangioma in his back and a lumbosacral dimple. Id., p. 152.

26. Dr. García received and reviewed the patient's medical records from Bella Vista Hospital, Perea Hospital, Hopistal San Antonio, HIMA and from the office of Dr. Normando Durán. Docket No. 199, Exhibit 9, p. 21.

27. Dr. García testified that the study done was an MRI of the lumbosacral spine performed during the admission of the baby at Hospital Perea on June 2012. Id., at p. 91. According to Dr. García, it was an MRI. Id., at p. 99. When Dr.

> García trained in general surgery, he became acquainted with the condition known as dermal sinus tract. Id., at p. 35.
>
> 28. Dr. García recognized during his deposition Sabiston, Textbook of Surgery, 17th edition and Nelson Textbook of Pediatrics, 19th edition, as two recognized authorities relevant to the present case. Id., at p. 31 and 93.

### 1. Qualifications.

It is the Court's duty to first determine whether Dr. García is qualified and has specialized knowledge, as required under Rule 702. Bogosian v. Mercedes Benz of N. Am. Inc., 104 F.3d 472, 476 (1st Cir. 1997).

As the uncontested facts show, Dr. García has a bachelor's degree in science from McGill University, and his medical degree from the Universidad de Salamanca, Spain. His residency in surgery was between 1968 and 1972 at the Veterans Administration Hospital in Centro Médico in San Juan and Ponce District Hospital, and he has post-graduate studies in the areas of laparo-endoscopic surgery, and a refresher course in colon and rectal surgery. Dr. García's main practice area is gastro-intestinal conditions, yet he is not board certified, and he is not a pediatric surgeon.

An expert "with appropriate credentials and an appropriate foundation for the opinion at issue must be permitted to present testimony as long as the testimony has a 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 57 (1st Cir. 2010). Furthermore, it has been established that specific credentials, such as an up-to-date board certification, are not required for an expert to be qualified to testify. Pages-Ramírez v. Ramírez-

González, 605 F.3d 109, 114 (1st Cir. 2010) (finding that expert's medical training and whether his testimony would assist the trier better to understand a fact in issue are the appropriate fields of inquiry for the district court).

As previously stated, however, the expert must meet a twofold standard - he must have appropriate credentials *and* an appropriate foundation for the opinion at issue. While Defendant Hospital San Antonio is correct that under Puerto Rico law an expert need not specialize in the specific field at hand in order to testify as such, the Court finds that Dr. García disqualified himself as an expert witness in this case through the admissions he made during his deposition. Based on Dr. García's admissions, the Court cannot find that his qualifications render him an expert in this case that will, in turn, aid the trier of fact to better understand the issues in this case.

One of Plaintiffs' main allegations is that Dr. Durán misdiagnosed and mistreated Plaintiff JMF, an infant, who was referred to him for a condition of sacral dimple and who Dr. Durán understood had a coccygeal pit. These are specialized conditions of the lumbar and sacral area, which can lead to meningitis, which the minor in this case twice contracted. Plaintiffs' posit that Dr. Durán disregarded the information contained in the referral and paid no attention to the dimple minor Plaintiff had in his back, which clearly identified the condition he had. In so doing, Plaintiffs proffer Dr. Durán misdiagnosed and mistreated JMF.

Although a surgeon, Dr. García's main practice area is completely outside the specific facts of this case, as his specialized field is a different one and he does not operate on minors. Dr. García also admitted he has never performed a surgery like the one that Dr. Durán performed in this case, much less on a minor. In fact, Dr. García has never

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 13 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  13

operated a sacral dimple, which was the referral Dr. Durán received that the minor had, or a coccygeal pit, which was what Dr. Durán understood the minor had.  Because of this, Plaintiffs posit the subsequent surgery Dr. Durán performed was the incorrect procedure to treat the minor's condition.

Dr. García further admitted that he does not know if anomalies in the coccygeal region have different meanings than anomalies in the lumbar region, which is at the heart of this case.  Because of this, Dr. García stated he would refer those patients to a pediatric surgeon or a neurosurgeon.[1]  Dr. García further admitted that, if a patient was referred to him with either of those conditions, a coccygeal pit or a sacral dimple, he would refer them to a neurosurgeon, because those conditions are outside his field of specialty.[2]

The Court was flabbergasted to read that Dr. García also acknowledged he could neither accept nor contest the preoperative diagnoses or the postoperative findings of Dr. Iván Sosa, who performed the corrective surgery on the infant Plaintiff.  In fact, Dr. García also failed to read the post-operative report of Dr. Sosa's surgery.  Precisely because Dr. Sosa opined that Dr. Durán performed the incorrect procedure is the reason why Dr. García's report should have considered this matter.  Given this situation, the Court cannot fathom how Dr. García can defend Dr. Durán's actions when his report is lacking information regarding the events subsequent to those he is charged with defending, and when he failed to read the post-operative report of those events.

---

[1] As Plaintiffs state, the location of a dimple or pit in the patient's back is crucial to assess the risks it represents - a pit in the coccygeal region is usually normal, a dimple in the lumbosacral area is not.  As stated in his deposition, Dr. García did not know this.

[2] Interestingly, while Defendant Hospital San Antonio posits in its motion that "obviously Dr. García knows what to do when a surgeon receive (sic) a referral like the one received" (Docket No. 199, p. 22), Dr. García explicitly denied this in his deposition- instead, Dr. García stated, several times, he would instead would refer the person to a specialist.

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page 14

Compounding the problem is the fact that Dr. García accepted he did not review the Complaint in this case in order to see exactly what the allegations were. Neither case law nor the Rules require courts to scrutinize the sufficiency of the data relied upon by an expert witness. Nevertheless, when an expert, having had the opportunity and the means to evaluate relevant evidence fails to do so, the Court may draw inferences as to the reliability of the testimony's support, which will be more thoroughly discussed in the next section. See Ruiz-Troche, 161 F.3d at 81 (Trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable). The Complaint is the heart of this case, and it is the most basic document in any legal case. The fact that Dr. García admits he failed to review it is remarkable.

Given Dr. García's admissions, the Court cannot see how Dr. García is qualified to render an opinion as to the correctness of Dr. Durán's actions. Dr. García cannot be said to be as "careful as he would be in his regular professional work outside his paid litigation consulting." Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997) (citing Daubert). Dr. García's practice outright does not engage in any of the issues that are present in this case, he failed to review relevant documents, he frankly admitted he had no experience in this type of surgery, had never performed it before, could not opine on the corrective procedure done on the infant in this case and would send any referrals with the conditions this minor had to a specialist. As Plaintiffs candidly point out, "that other specialist was the specialist Defendants needed in this case." Docket No. 203, p. 15. Plaintiffs are correct.

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 15 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page 15

**B.     Reliability.**

The Court also finds Dr. García's scant report to be unreliable.  As part of the Court's gate keeping duties, trial courts must also ensure that expert testimony is tied to the facts of the case in a way that aids the jury in carrying out its fact-finding functions. See Daubert 509 U.S. at 591 (expert testimony which does not "fit" the facts of the case is "not relevant and, ergo, not helpful"); see also Milward v. Rust-Oleum Corp., 820 F.3d 469, 473 (1st Cir. 2016)(courts must "serve as the gatekeeper for the expert testimony by 'ensuring that [it] . . . both rests on a reliable foundation and is relevant to the tasks at hand.'")(*quoting* Daubert, 509 U.S. at 597).

In reviewing the reliability of proffered expert testimony, the trial court conducts a "flexible inquiry", which includes "… consideration of the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance with the scientific community". Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 26 (1st Cir. 2002).  The broad latitude so granted to trial courts nevertheless needs grounds on which to be exercised.

Case law has held that, if the witness is relying solely or primarily on experience, then the witness must provide more.  Certainly "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Kumho, 526 U.S. at 156, 119 S.Ct. 1178.  However, a witness who has principally relied on experience to form his opinion "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Frazier, 387 F.3d at 1261. The Court is not required to

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 16 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  16

"admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert".  General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

In the instant case, Dr. García's report states the records he reviewed, a timeline of the events, a recital of what Dr. Durán did, and his skimpy conclusion that "in my opinion, there is no act of negligence whatsoever by Dr. Durán".  Although not explicitly so stated in the report, Dr. García seems to invite the Court to take his word for the conclusion he reaches based on his experience as a doctor, because he does not rely on or cite any medical literature, scientific method, previous cases, or studies in which to base his conclusion.  Yet, in order to reach such a conclusion, the report must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts, as required under Daubert.  Dr. García fails to do this.  Simply put, the trial court's gatekeeping function requires more than simply "taking the expert's word for it." See Daubert, 43 F.3d at 1319 ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under Daubert, that's not enough").

Yet, the report is deficient in another crucial matter.  Defendant Hospital San Antonio states that, under Puerto Rico law, in order to prevail, Plaintiffs need to introduce evidence as to the standard of care in order to determine the cause of the injury, and that has been the norm for some time.  Casillas-Sánchez v. Ryder Mem'l Hosp., Inc., 14 F. Supp. 3d 22 (D.P.R. 2014) (plaintiff ordinarily must provide expert testimony to outline the minimum acceptable standard of care and to conform the defendant doctor's failure to meet it.).

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 17 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page 17

Thus, in defending Dr. Durán, Dr. García had to state what the standard of care was and how Dr. Durán followed it in this case. Such a standard is notably absent from Dr. García's report. Also notably absent is any literature or studies supporting that Dr. Durán followed such standard of care, and therefore his conclusion that Dr. Durán acted correctly. It is as though the expert report was written in a vacuum. The complaint was not analyzed, there was no standard of care mentioned, no methodology as to how Dr. García arrived at his conclusion that Dr. Durán acted correctly, and no opinion on Dr. Sosa's actions, which Plaintiffs allege repaired Dr. Durán's "mistake". How can the jury determine whether or not Dr. Durán acted correctly and followed the standard of care when there is no evidence of what the standard of care is? That is precisely what medical literature would have provided, and which is lacking from Dr. García's report. The report reaches a conclusion with no explanation as to its methodology; it simply recites the facts and concludes they are correct. The Court cannot find such a conclusion to be reliable. Moreover, such evidence "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

Although exclusion of an expert is a severe sanction, it is not all that uncommon. Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 n. 6 (7th Cir. 1998) ("Expert reports must not be sketchy, vague, or preliminary in nature."); Kerlinisky v. Sandoz Inc., 783 F.Supp.2d 236, 242 (D.Mass. 2011) (striking expert report that failed to "provide with any reasonable degree of specificity the basis and reasons for [the expert's] opinions"); Elder v. Tanner, 205 F.R.D. 190 (E.D.Tex. 2001) (striking report under Rule 26 for failing to discuss the expert's reasoning and thought process, and under Daubert for making

Case 3:14-cv-01597-CVR   Document 211   Filed 03/24/17   Page 18 of 18

Juan Miguel Muñoz-Vargas et al. v. Olga Rodríguez-Laguer et al.
Opinion and Order
Civil 14-1597 (CVR)
Page  18

"conclusory statements" that lacked "any elaboration or reasoning"); <u>Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este</u>, 456 F.3d 272, 276 (1st Cir. 2006) (affirming the district court's striking of a conclusory expert report, and holding that the "baseline" sanction for such a failure is preclusion of the evidence).

It is the Court's duty to ensure the <u>Daubert</u> standard is met before allowing any expert testimony. "Many aspects of science are a mystery to laymen without the aid of experts.  In the world of the blind, the one-eyed man is king; and <u>Daubert</u> relevancy is the sentry that guards against the tyranny of experts."  <u>Samaan v. St. Joseph Hosp.</u>, 670 F.3d 21, 35 (1st Cir. 2012).

In sum, the court finds that Dr. García's testimony and report fail to comply with the <u>Daubert</u> standards.  Thus, the Court cannot allow Dr. García's testimony or his report.

## CONCLUSION

In view of the foregoing, the Court GRANTS Plaintiffs' Motion in Limine (Docket No. 184). Consequently, Defendant Hospital San Antonio is precluded from presenting Dr. Fernando García's testimony or his report as an expert witness in this case.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 24th day of March, 2017.

        S/CAMILLE L. VELEZ-RIVE
        CAMILLE L. VELEZ RIVE
        UNITED STATES MAGISTRATE JUDGE